Roy R. Romer State Treasurer State Capitol Denver, Colorado 80203
Dear Mr. Romer:
This office has received a letter dated April 4, 1979, from Dick R. Murphy, Director of Treasury Operations, which requests an opinion concerning practices of the Treasury Department which have been questioned in the pre-release copy of the state auditor's report on the Treasury Department for the fiscal year 1978 ("the audit report"). This letter is written in response to your inquiry concerning moneys loaned to the Department of Institutions, Correctional Industries ("Correctional Industries"). Your other inquiries are answered in other letters.
The audit report states that the treasurer made a loan to Correctional Industries of $750,000 during the fiscal year ended June 30, 1978, and recommends that the treasurer obtain an opinion whether interest should be collected on that loan. Mr. Murphy's letter asks for additional advice "as to the characteristics of loan agreements which may be legally entered into by the treasurer."
QUESTIONS PRESENTED AND CONCLUSIONS
Your request for an attorney general's opinion presents two questions:
1. Must the treasurer collect interest on a $750,000 loan made to Correctional Industries during the fiscal year ended June 30, 1978?
My conclusion is "yes."
2. Must the treasurer comply with the prior approval and purpose requirements of C.R.S. 1973, 24-75-202(a) for loans made under H.B. 1096?
My conclusion is "yes."
ANALYSIS
Statutory authority for the treasurer to make loans for certain purposes exists in C.R.S. 1973, 24-75-203(2), which states the following requirements for such loans:
 (a) Upon the prior written approval of the governor and the controller as to purpose and amount, the state treasurer may lend the approved amount, out of any moneys in the state treasury not immediately required to be disbursed, to any department, institution, or agency to provide it with temporary working capital for the operation of auxiliary or business-type enterprises or for research conducted under contract or grant, provided such activities are not financed to any extent whatsoever by appropriated state moneys and the revenue or receipts therefrom are not to be deposited in the state treasury.
 (b) Any such loan shall be made for a period of time not exceeding one hundred eighty days, shall bear interest at the rate currently being charged by federal reserve banks on member bank borrowings, and shall be repaid to the state treasury by the borrower out of moneys to be subsequently received by it from the activities specified in paragraph (a) of this subsection (2).
(Emphasis supplied.)
The audit report states that this statute does not authorize the loan to Correctional Industries because Correctional Industries' activities are financed by appropriation and receipts are deposited in the treasury. Assuming that the audit report is correct that activities for which moneys were loaned are financed by appropriation and receipts deposited in the treasury, other provisions of law purport to direct the treasurer to loan moneys to Correctional Industries. The long bill adopted by the general assembly in 1977 included a footnote to the general fund appropriation to Correctional Industries for the fiscal year beginning July 1, 1977, which provided:
 This appropriation includes a $750,000 general fund loan for the purchase of agricultural commodities. This loan is to be repaid by June 30, 1978, or a loan repayment extension must be approved prior to that date.
S.B. 581, 1977 Colo. Sess. L. ch 1 at 85n. 65.
This loan provision was subsequently amended by a supplemental appropriation approved as part of H.B. 1245 adopted in 1978 which also amended footnote 65 to provide as follows:
 This appropriation includes a $253,278 general fund loan which is to be released only upon the written approval of the correctional industries advisory committee. The controller shall charge an interest rate in accordance with section 24-75-203(2)(b), C.R.S. 1973. This loan is to be repaid by June 30, 1978, or a loan repayment extension must be approved prior to that date. None of these funds are to be used for capital construction.
H.B. 1245, 1978 Colo. Sess. L. ch. 7 at 130.
Section 4 of H.B. 1245 provided for an additional appropriation to Correctional Industries for the fiscal year ended June 30, 1978, in the amount of $496,722 for construction and repair projects, subject to the following provisions:
 (2) These funds are loans to be released to the division of correctional industries only upon the written approval of the correctional industries advisory committee. The controller shall charge an interest rate in accordance with the provisions of section 24-75-203(2)(b), C.R.S. 1973.
The above appropriations constitute a legislative declaration that during the fiscal year ended June 30, 1978, a $750,000 loan be made to Correctional Industries from moneys in the treasury regardless of restrictions provided for in C.R.S. 1973,24-75-203(2). That statute is referred to in the appropriation bills only for the purpose of incorporating by reference the interest rate set out in subsection 2(b).
It is well established law that the general assembly may not use an appropriation bill to enact substantive legislation, or to amend or repeal a law. Colorado Constitution, art. V, § 32.See, e.g., Anderson v.Lamm, 195 Colo. 437, 579 P.2d 620 (1978). Provision for the loan of state moneys by appropriation bill does not provide authority for the treasurer to make that loan to Correctional Industries because of the restrictions found in C.R.S. 1973,24-75-203(2).
The general assembly has attempted to correct this problem by H.B. No. 1096 passed at the current session. H.B. No. 1096 was approved by the Governor on May 22, 1979.
H.B. 1096 expressly authorizes Correctional Industries to borrow money from the treasury by amending C.R.S. 1973, 17-24-106(1)(j) to include among the general powers of Correctional Industries the following power:
 To borrow money from the state treasury in an amount not to exceed three million dollars pursuant to section 24-75-203, C.R.S. 1973, for a period of time not to exceed ten years. All moneys borrowed, including principal and interest, not to exceed three percent, shall be repaid in nine equal annual installments, commencing after the first year. All moneys borrowed or disbursed by the division pursuant to this paragraph (j) shall have first been approved by the joint review committee on corrections created by section 17-1-110. The three million dollar limit shall include any amounts loaned to correctional industries in supplemental appropriation bills passed prior to the effective date of this bill.
(Emphasis supplied.)
H.B. 1096 also amends C.R.S. 1973, 24-75-203(2)(b) to provide as follows:
 Except as provided in section 17-24-106(1)(j), C.R.S. 1973, any such loan shall be made for a period of time not exceeding one hundred eighty days and loans shall bear interest at an annual rate currently being charged by federal reserve banks on member bank borrowings for that year. Loans shall be repaid to the state treasury by the borrower out of moneys to be subsequently received by it from the activities specified in paragraph (a) of this subsection (2).
The passage of H.B. 1096 provides express statutory authority for the $750,000 loan previously made to Correctional Industries. The terms of that loan will be governed by the provisions of H.B. 1096, including the maximum three percent interest rate and the provision for repayment over a ten year period, with payments of principal and interest to be repaid in nine equal annual installments, commencing after the first year.
While this loan was authorized to carry out the expressed intent of the general assembly, there are a number of problems in the manner in which the loan was made. The appropriations bills which originally provided for the loan conditioned release of the funds on written approval of the Correctional Industries Advisory Committee. No evidence has been presented to this office that such approval was obtained prior to release of the funds. H.B. 1096 requires that loans must first be approved by the Joint Review Committee on Corrections and loans should not be made absent that approval.
A continuing problem has not been clearly resolved by H.B. 1096. The amendment to C.R.S. 1973, 17-24-106(1)(j) empowers Correctional Industries to borrow money "pursuant to section24-75-203, C.R.S. 1973." The audit report has pointed out, however, that Correctional Industries does not qualify for a loan under the provisions of 24-75-203(2)(a). H.B. 1096 does not amend subsection (a) of that statute.
It is a general principle of statutory construction that if a general provision conflicts with a special provision, it shall be construed if possible, so that effect is given to both. If the conflict is irreconcilable, the special provision ordinarily prevails as an exception to the general provision. C.R.S. 1973,2-4-205. It is my opinion that H.B. 1096 is a special provision, the legislative intent of which is to authorize loans to Correctional Industries even though Correctional Industries is financed by appropriated funds and it deposits receipts with the treasurer. This special provision must be construed to control any conflicting provisions of the general loan provision of C.R.S. 1973, 24-75-203(2)(a) if the clear legislative intent is to be carried out. On the other hand, that portion of the general provision concerning prior approval and the limited purposes for which loans may be made, is consistent with H.B. 1096 and should be given effect. This construction problem could better be resolved by legislation which clarifies that the authority to make loans to Correctional Industries is independent of C.R.S. 1973, 24-75-203(a), or which amends that statute to remove the restrictions which disqualify Correctional Industries.
SUMMARY
In conclusion, it is my opinion that the loan to Correctional Industries of $750,000 during the fiscal year ended June 30, 1978, is authorized. Pursuant to H.B. No. 1096 payments of interest or principal are due in nine equal installments, commencing after the first year and the interest rate may not exceed three percent, regardless of the provisions of the existing note, and of conflicting provisions of C.R.S. 1973,24-75-203(2)(b). Any loans made pursuant to the authority of H.B. No. 1096 must also meet the prior approval and purpose requirements of C.R.S. 1973, 24-75-202(a).
If you have additional questions, please feel free to contact this office.
Very truly yours,
 J.D. MacFARLANE Attorney General
TREASURER, STATE CORRECTIONAL FACILITIES LOANS INTEREST
C.R.S. 1973, 24-75-202(a) C.R.S. 1973, 17-24-106(1)(j)
Colo. Const. art. V, § 2
TREASURY, DEPT. OF All Other Areas LEGISLATIVE BRANCH Auditor, Office of State CORRECTIONS, DEPT. OF Corr. Industries, Div. of
The state treasurer was authorized to loan moneys to Correctional Industries during fiscal year 1978 and to collect payments of principal together with interest not to exceed a rate of three percent. Such loans must first be approved by the Joint Review Committee on Corrections.